Tarek H. Zohdy (CA Bar No. 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (CA Bar No. 275553)
Cody.Padgett@capstonelawyers.com
Laura H. Goolsby (CA Bar No. 321721)
Laura.Goolsby@capstonelawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL KARUNATILAKA, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Neil Karunatilaka ("Plaintiff") brings this action on behalf of himself and all others similarly situated, against Defendant Tesla, Inc. (d/b/a Tesla Motors, Inc.) ("Tesla"). Plaintiff's allegations are based upon personal knowledge and belief as to his own acts, upon the investigation of his counsel, and, where specifically stated, upon information and belief.

## INTRODUCTION

1.    Plaintiff brings this action individually and on behalf of a proposed class of similarly situated owners of Tesla model vehicles. This action arises out of Tesla's false advertising of its electric vehicles' range, which Tesla grossly overvalued when selling the vehicles to consumers.

2.    Tesla designs, manufactures, advertises, markets, and sells electric vehicles to consumers.

3.    A key feature of electric vehicles is the "range" of the electric vehicle—that is, the distance the electric vehicle can be driven on a single battery charge, before requiring the driver to stop and recharge the vehicle. The electric vehicle's range directly correlates to the electric vehicle's battery charge. An electric vehicle's range is roughly equivalent to a gas-powered vehicle's potential range it can be driven on a single tank of gas, or it's "distance to empty."

4.    The electric vehicle's range is one of the most important features that consumers generally consider when purchasing an electric vehicle, because it correlates to the distance they can travel before needing to recharge the vehicle. In fact, when a consumer visits Tesla's website to view any of Tesla's various electric vehicle models, "range" is the *first* listed feature advertised among other key features.

5.    Understanding that this would be an important feature (if not the most important feature) to many consumers, and preying on this fact, Tesla marketed its electric vehicles as having a grossly overvalued range in an effort to increase sales to consumers. As it so happens, Tesla advertised its vehicles as having ranges that, in some instances, were 26% over the actual

average range of the electric vehicle.[1]

6.      After purchasing their Tesla electric vehicles, many Tesla owners noticed that the average range in their vehicles was well-below the range Tesla had advertised prior to their purchase. As some owners grew concerned, they contacted Tesla to schedule service appointments to confirm whether anything was wrong with their electric vehicle or its battery.

7.      However, many consumers who complained or scheduled appointments with Tesla regarding the below-advertised ranges in their vehicles discovered that Tesla would cancel such appointments and would explain that their electric vehicle was performing as intended.[2]

8.      As a result of Tesla's unfair, deceptive, and/or fraudulent business practices in advertising grossly overestimated range statistics for its electric vehicles to consumers, Tesla purchasers, including Plaintiff, were harmed.

9.      Had Plaintiff and putative Class Members known that the advertised range of Tesla vehicles were grossly overestimated, they would not have bought Tesla model vehicles, or else would have paid substantially less for them.

10.     As a result of Tesla's tactics and false advertising, Plaintiff and Class Members suffered an injury in fact, incurred damages, and have been harmed by Tesla's conduct.

11.     Accordingly, Plaintiff brings this action to redress Tesla's violations of state consumer fraud statutes, fraud, negligent misrepresentation, breach of express warranty, breach of implied warranty, violation of California's Song-Beverly Consumer Warranty Act, and unjust enrichment.

## **PARTIES**

12.     Plaintiff Neil Karunatilaka is a resident and citizen of Citrus Heights (Sacramento County), California. In November 2022, Plaintiff purchased a pre-owned 2019 Tesla Model 3

---

[1] Reuters, "Tesla created secret team to suppress thousands of driving range complaints" https://www.reuters.com/investigates/special-report/tesla-batteries-range/ (last accessed, Nov. 14, 2023).
[2] *Id.*

vehicle from Tracy Volkswagen in Tracy, California (2605 Auto Plaza Way, Tracy, California 95304). The vehicle had 64,349 miles on it at the time of purchase.

13.     Defendant Tesla, Inc. d/b/a Tesla Motors, Inc. is a Delaware corporation, with its headquarters in Austin, Texas, and maintains its engineering headquarters in Palo Alto, California.

14.     Prior to December 2021, Tesla maintained its headquarters in Palo Alto, California. In December 2021, Tesla moved its headquarters from Palo Alto, California, to Austin, Texas.[3]

15.     Despite moving its headquarters to Austin, Texas, Tesla continued to operate locations in California, including one of its factories in Fremont, California, which produces Model S, Model 3, Model X, and Model Y vehicles.[4] In addition to its dealerships throughout the state, Tesla also maintained locations in Lathrop, Los Angeles, and San Diego, California.[5] By 2022, Tesla employed approximately 47,000 employees in California alone.[6] While Tesla grew worldwide, Elon Musk, Tesla's CEO since October 2008 and a member of its board since April 2004,[7] noted that Tesla continued to expand in California in particular and that he expects

---

[3] Tesla, "Contact" https://www.tesla.com/contact (last accessed, Nov. 14, 2023); The Associated Press, "Tesla officially moves headquarters from California to Texas" https://www.tesla.com/manufacturing (last visited Nov. 14, 2023).

[4] Tesla | Careers, "Manufacturing" https://www.tesla.com/manufacturing (last accessed, Nov. 14, 2023).

[5] CNET Highlights, Elon Musk's Remarks During Engineer HQ Debut, YouTube (Feb. 23, 2023), https://youtu.be/vl-Av28e0fo?t=82 (last accessed, Nov. 14, 2023) (remarks and presentation at the opening of Tesla's Global Engineering Headquarters by Elon Musk, noting Tesla's California locations).

[6] CNET Highlights, Elon Musk's Remarks During Engineer HQ Debut, YouTube (Feb. 23, 2023), https://youtu.be/vl-Av28e0fo?t=178 (last accessed, Nov. 14, 2023) (noting Tesla's "large impact in California"); CleanTechnica, "Tesla's Engineering Headquarters in California" https://cleantechnica.com/2023/03/17/teslas-engineering-headquarters-in-california/#:~:text=Now%2C%20Tesla's%20engineering%20headquarters%20is,from%20Reuters%20and%20USA%20Today (last accessed, Nov. 14, 2023).

[7] Tesla | Investor Relations, "Corporate Governance - Elon Musk" https://ir.tesla.com/corporate/elon-musk (last accessed, Nov. 14, 2023).

such expansions in the state to continue.[8] Moreover, Elon Musk noted that Tesla created almost $45 million worth of value per day in California's economy alone.[9]

16.     In February 2023, Tesla announced that it would be returning its headquarters to California by opening its "Global Engineering Headquarters" in Palo Alto, California.[10] During an event marking the opening of the facility, Elon Musk, Tesla's CEO, stated that Tesla's Global Engineering Headquarters was "effectively a headquarters of Tesla" and that Tesla was "kind of a dual-headquartered company."[11] Elon Musk also described Tesla as "a California-Texas company."[12]

17.     Regardless of the terminology Tesla may use, Tesla maintains two headquarters, located in Austin, Texas, and in Palo Alto, California. Tesla maintains substantial and continuous contacts in the States of Texas and California. Tesla maintains its principal place of business either in the State of Texas or the State of California, and maintains substantial and continuous contacts in the other State, such that the exercise of general jurisdiction in either Texas or California is proper.

18.     Accordingly, for jurisdictional purposes, Defendant Tesla, Inc. d/b/a Tesla Motors, Inc. is a citizen of the States of Delaware, Texas, and California, and is subject to the jurisdiction of the States of Delaware, Texas, and California.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are related to the federal claims and form part of the same case and

---

[8] *See supra* note 6.
[9] CNET Highlights, Elon Musk's Remarks During Engineer HQ Debut, YouTube (Feb. 23, 2023), https://youtu.be/vl-Av28e0fo?t=178 (last accessed, Nov. 14, 2023).
[10] Tesla, "Contact" https://www.tesla.com/contact (last accessed, Nov. 14, 2023).
[11] CNBC, "Elon Musk meets with California Gov. Newsom at Tesla's new engineering headquarters to discuss expansion" https://www.cnbc.com/2023/02/22/elon-musk-meets-with-california-gov-newsom-at-teslas-engineering-hq.html (last accessed, Nov. 14, 2023).
[12] *Id.*

1 controversy.

2      20.    This Court also has subject matter jurisdiction pursuant to the Class Action

3 Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members

4 exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than

5 100 putative class members; and at least one putative class member is from a state different from

6 Tesla.

7      21.    This Court has personal jurisdiction over Tesla because it conducts substantial

8 business in this District and because Tesla is registered to do business in California. Elon Musk,

9 Tesla's CEO, has described Tesla as a "a dual-headquartered company," because it maintains its

10 Global Engineering Headquarters in Palo Alto, California, which he noted was "effectively a

11 headquarters of Tesla."[13] Thus, Tesla maintains a continuous and significant portion of its

12 business in California and in this District.

13      22.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part

14 of the events or omissions giving rise to the claims occurred in this District. Venue is also proper

15 in this District under 18 U.S.C. § 1965 because Tesla transacts its affairs in this District and the

16 ends of justice require it.

17            **GENERAL FACTUAL ALLEGATIONS**

18      23.    Tesla designs, manufactures, advertises, markets, and sells its electric vehicles

19 throughout the United States and worldwide.

20      24.    Tesla sells four main models of electric vehicles, each of which includes various

21 "sub-models" or versions: the Model 3, the Model Y, the Model S, and the Model X.

22 ***The Tesla Purchasing Experience***

23      25.    Tesla sells its vehicles directly to consumers. Although Tesla has dealerships and

24 showrooms, Tesla maintains control over those dealerships and ensures that all sales of its

25 vehicles are directly through Tesla, rather than a third party.

26

27 [13] *Id.*

26.     Consumers wishing to purchase a Tesla vehicle, thus, most often do so through Tesla's website, by selecting the preferred model and various features to "build" the vehicle they will purchase.

27.     For example, a consumer wishing to purchase a Tesla Model 3—Tesla's baseline model vehicle—can view available inventory or create a custom order, by selecting the features they most prefer.

28.     For the Model 3, for example, Tesla advertises three attributes above all others: the price, the vehicle's acceleration from 0-60 mph, and the vehicle's range. See below:[14]



29.     If a consumer wishes to explore available inventory, Tesla lists options available for purchase directly from Tesla, including "key features" of the vehicle. Among these "key features," Tesla lists the range, top speed, and vehicle's acceleration from 0-60 mph, in that order, along with the price, model, and version of the vehicle (as indicated in the example below):[15]

---

[14] Tesla, "Model 3" https://www.tesla.com/model3 (last accessed, Nov. 14, 2023).
[15] Tesla, "Inventory" Model 3
https://www.tesla.com/m3/order/5YJ3276_9cf71b05e29b56b2eb5242ecb2f0eafc?postal=37923&range=200&region=TN&coord=35.9375,-84.073&titleStatus=new&redirect=no#overview (last accessed, Nov. 14, 2023).




30.     Consumers also may "custom order" their Tesla vehicle, by choosing the particular vehicle features and attributes they prefer. With this option, Tesla custom builds the vehicle to the consumer's preference.

31.     By custom ordering, a consumer can ensure they select a custom-tailored Tesla vehicle to their preference, selecting the ideal version, range, wheel style, color, and interior trim. Any time a feature selection is changed, the vehicle's price, range, top speed, and acceleration from 0-60 mph will be adjusted. While certain features may impact the vehicle's price, not all features will impact the vehicle's range, speed, or acceleration. For example, selecting a red paint style and black-and-white interior trim will increase the price by $3,000 total, it will not impact the vehicle's range, speed, or acceleration; but selecting 19" sport wheels will increase the price by $1,500 total and will impact the vehicle's range.[16]

32.     For a rear-wheel drive Model 3 version—the base version of the Model 3—with 18" Aero Wheels, the listed range is 272 miles, with a 140-mph top speed, and 5.8 second acceleration from 0-60 mph, as indicated below:[17]

---

[16] Tesla, "Design Your Own" Model 3 https://www.tesla.com/model3/design#overview (last accessed, Nov. 14, 2023).
[17] *Id.*

33.

34.     For a Dual Motor All-Wheel Drive Model 3 Long Range version with 18" Aero Wheels, the listed range is 333 miles, with a 145-mph top speed, and 4.2 second acceleration from 0-60 mph, as indicated below:[18]



35.     And for a Dual Motor All-Wheel Drive Model 3 Performance version with 18"

---

[18] *Id.*

Aero Wheels, the listed range is 315 miles, with a 162-mph top speed, and 3.1 second acceleration from 0-60 mph, as indicated below:[19]





36.     When customizing the vehicle, Tesla further notes that selecting a different style of wheel may impact the vehicle's range.

37.     Regardless of the method a consumer uses to purchase a Tesla model vehicle—whether by exploring available inventory of vehicles or by custom ordering a vehicle—Tesla advertises the electric vehicle's range as a key factor of the vehicle.

38.     And at every turn, Tesla grossly overinflates the vehicle's range.

***Tesla Vehicles Display Real-Time Range Estimates***

39.     Each of Tesla's model vehicles comes equipped with a screen displaying navigation, infotainment, vehicle settings, and key vehicle information, including battery charge indicators and range information.

40.     Tesla vehicles provide range estimates in real-time. The intention is to provide the driver with real-time updates on the electric vehicle battery's performance, which directly correlates to the range the vehicle can be driven. Accurate range estimates help to ensure that, as the battery drains, the driver knows to pull over at a charging station before the battery drains

---

[19] *Id.*

completely, leaving the driver and occupants stranded. Inaccurate range estimates can, indeed, lead a driver to being stranded, as the battery drains completely—and unexpectedly, based upon inaccurate range information.

41.     Tesla vehicles provide range estimates in two ways. First, through a meter on the screen that is always displayed. This meter can be toggled to indicate either the electric vehicle battery percentage remaining or the range (measured in miles or kilometers) remaining. Second, through the vehicle's navigation system, which estimates the range (indicated in battery percentage) remaining, as compared to the set destination. However, if no destination is input into the navigation system, the vehicle will not indicate a range estimate through this latter method.

42.     Tesla has developed its own proprietary software and algorithms for estimating and updating in real-time the range and battery performance in its vehicles, as displayed through the Tesla system displayed on the screen.

***Tesla Informs Consumers That They Should Not Charge Their Vehicle to Full Capacity***

43.     Following purchase, each Tesla vehicle sets a suggested charge limit—that is, a an upper limit to stop charging the battery. For example, if an 80% limit is set, the battery will continue to charge until it reaches 80% capacity, then will stop charging. This effectively ensures that the battery cannot be fully charged to 100%.

44.     A consumer can manually override the charge limit. However, Tesla recommends that consumers *not* exceed the suggested charge limit. Tesla specifically suggests that consumers "[c]harge the battery to the appropriate charge limit for your vehicle based on the installed battery."[20]

45.     Tesla suggests that Tesla owners should charge their vehicle to full 100% capacity only sparingly. In fact, Tesla's chief executive officer, Elon Musk, suggests that owners should

---

[20] Tesla | Support, "Range Tips" https://www.tesla.com/support/range (last accessed Nov. 14, 2023).

only charge to 90% or 95% when necessary.[21]

46.     Setting charge limits directly impacts total range. Tesla's advertised total range of its vehicles are based on a full charge. However, because Tesla discourages owners from ever charging their vehicles to 100%, it is increasingly difficult—if not impossible—to ever reach that advertised range. For example, setting the vehicle's charge limit at 80% can reduce the total range by *over a hundred* miles, compared to the advertised range.

47.     Effectively, based upon Tesla's suggested charge limits, Tesla vehicles cannot reach the total ranges Tesla advertises.

48.     Notably, while Tesla openly advertises its total range estimates (which already are exaggerated) to consumers at the point of purchase, it does not indicate to consumers that they can expect to limit the vehicle's total range by setting charge limits.

### *How Tesla Calculates the Ranges It Advertises*

49.     Electric vehicle manufacturers are required by the Environmental Protection Agency ("EPA") to advertise fuel-efficiency information, as indicated in a miles-per-gallon equivalent ("MPGe") and estimate of the electric vehicle's total range. The MPGe indication allows consumers to compare the electric vehicle directly with gasoline and diesel vehicles. The estimates of the vehicle's total range allow consumers to examine how far an electric vehicle can be expected to travel on a full charge, in combined city and highway driving.

50.     Although the EPA requires that electric vehicle manufacturers advertise the vehicle's range, the EPA does not dictate precisely how this range is calculated.

51.     The EPA provides a standardized formula, which converts fuel-economy results from city and highway driving tests to calculate the vehicle's total range figure. However,

---

[21] Mashable, "Elon Musk explains why you shouldn't charge your Tesla battery to 100%" https://mashable.com/article/tesla-battery-charge-max#:~:text=Tesla-,Elon%20Musk%20explains%20why%20you%20shouldn't%20charge%20your%20Tesla,up%20to%2090%2D95%25.&text=Electric%20car%20batteries%20should%20not,up%20to%2090%0%25%20by%20default (last accessed Nov. 14, 2023); *see also* Electrek, "Tesla battery expert recommends daily charging limit to optimize durability" https://electrek.co/2017/09/01/tesla-battery-expert-recommends-daily-battery-pack-charging (last accessed Nov. 14, 2023).

electric vehicle manufacturers may conduct their own testing to establish the range estimates for their vehicles. Generally, the only reason an electric vehicle manufacturer would choose to conduct its own testing is to ensure that it generates a more favorable total range estimate.

52.     Numerous electric vehicle manufacturers, including Ford, Mercedes, and Porsche choose to simply use the EPA's standardized formula to calculate the range in their electric vehicles. Doing so ensures that the potential range advertised to consumers reflects *conservative* estimates based on real-world driving conditions.[22]

53.     Tesla, however, does not use the EPA's standardized formula for any of its vehicles. Instead, Tesla conducts its own testing to calculate the total range for each of its model vehicles, resulting in inflated estimates compared to the ranges drivers actually experience.[23]

54.     In a recent audit, the EPA reviewed the estimated ranges in six Tesla models since the 2020 model year. Based on the EPA's testing, Tesla was required to lower the estimated ranges in all six of those model vehicles, because Tesla consistently was overestimating the range of its vehicles.[24]

55.     When selling a used vehicle, for example, Tesla owners can go visit www.fueleconomy.gov to download a Used Vehicle Fuel Economy label by using the provided online tool, which employs established EPA standardized formulae for estimating electric vehicle range.[25]

56.     An example of a fuel economy label developed by using this tool for a 2020 Tesla Model Y Performance vehicle is included below:

---

[22] *See supra* note 1.
[23] *Id.*
[24] *Id.*
[25] U.S. Department of Energy, *Office of Energy Efficiency & Renewable Energy* https://www.fueleconomy.gov/feg/UsedCarLabel.jsp (last accessed Nov. 14, 2023).



57.     Notably, this label describes the estimated electric vehicle range in these terms: "When fully charged, vehicle can travel about . . ." Describing the estimated range in this manner makes clear that the advertised range is available *only* at full 100% battery charge.

58.     When selling their vehicles , Tesla does *not* describe the estimated vehicle range in these terms or with equivalent warnings.

59.     Further, the label makes clear that "[a]ctual results will vary for many reasons including driving conditions." For a used vehicle, it also indicates that range may be impacted by "how the car was driven, maintained, or modified."

***Tesla Exaggerates the Ranges of Its Vehicles***

60.     For years, Tesla has been exaggerating the range of its vehicles—that is, the vehicle's potential driving distance before requiring the driver to recharge the electric vehicle's battery.[26]

---

[26] *See supra* note 1.

61.     On July 27, 2023, Reuters published a special report, by Steve Stecklow and Norihiko Shirouzu, detailing Tesla's tactics of seriously exaggerating the ranges of its vehicles (the "Reuters report").[27]

62.     Based upon information from those familiar with Tesla's early vehicle software designs, the Reuters report explains that Tesla developed algorithms for estimating the range of its electric vehicles, which would display to drivers "rosy" projections for the distance the vehicle could travel on a full battery.[28]

63.     However, once the battery reached 50% capacity, the algorithm would change and begin showing the driver more realistic projections. This would cause the estimated range of the vehicle to fluctuate drastically from that point.[29]

64.     The decision to include these algorithms to present inflated range estimates came directly from Tesla's chief executive officer, Elon Musk.[30] As the Reuters report indicates, "Elon [and Tesla] wanted to show good range numbers when fully charged . . . . When you buy a car off the lot seeing 350-mile, 400-mile range, it makes you feel good."[31]

65.     Tesla's tactics to inflate the range estimates for its vehicles has continued. Recently, South Korean regulators fined Tesla for false advertising the ranges of its vehicles. Specifically, the Korea Fair Trade Commission found that Tesla exaggerated the "driving ranges of its cars on a single charge, their fuel cost-effectiveness compared to gasoline vehicles as well as the performance of its Superchargers."[32] It was determined that, for example, the range of Tesla electric vehicles could drop by up to 50.5% in cold weather, as compared to the advertised

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *See* Reuters, "South Korea fines Tesla $2.2 mln for exaggerating driving range of EVs" https://www.reuters.com/markets/commodities/south-korea-fines-tesla-22-mln-exaggerating-driving-range-evs-2023-01-03 (last accessed Nov. 14, 2023).

---

CLASS ACTION COMPLAINT

ranges.[33]

66.     Other recent studies determined that various Tesla models averaged 26% below their advertised ranges.[34]

67.     Beginning with 2020 model year vehicles, the EPA has required Tesla to reduce the range estimates Tesla advertised to consumers.[35]

68.     Various factors can impact a Tesla model vehicle's range, including: high driving speeds, cold temperatures, "stop-and-go" traffic, driving uphill, and inclement weather (such as rain, snow, or headwinds).[36]

69.     However, recent testing has found that Tesla vehicles deliver actual ranges well below their advertised ranges. In 2022 and 2023, Recurrent, an electric vehicle analytics company, surveyed more than 8,000 Tesla model vehicles. The results of this survey determined that Tesla vehicles fail to accurately reflect how various factors or conditions will negatively impact the vehicle's range.[37]

70.     For example, while Tesla itself explains that temperature can negatively impact a vehicle's range, Recurrent's testing determined that Tesla model vehicles still overwhelmingly calculated that they could still deliver nearly the advertised full range, regardless of external factors—with Tesla vehicles calculating that they could travel more than 90% of their advertised range. Put simply, Tesla vehicles failed to accurately account for external factors impacting battery performance and vehicle range, leading to a gross overestimate of the vehicle's range.[38]

71.     Other electric vehicle manufacturers do not overestimate the range of their vehicles to the same extent. For example, Recurrent tested the Ford Mustang Mach-E, the Chevrolet Bolt, and the Hyundai Kona—all electric vehicles and direct competitors to Tesla

---

[33] *See supra* note 1.
[34] *Id.*
[35] *Id.*
[36] Tesla | Support, "Range Tips" https://www.tesla.com/support/range (last accessed Nov. 14, 2023).
[37] *See supra* note 1.
[38] *Id.*

model vehicles—and found their estimated ranges to be more accurate. In fact, the Hyundai Kona generally underestimated the range the vehicle could travel before requiring a recharge.[39]

72.     Tesla, however, chose to "take[] a different path from most other automakers." While other electric vehicle manufacturers advertise *conservative* range estimates, Tesla consistently advertised overly *aggressive* estimates of the range within its vehicles.[40]

73.     Another recent study, which compared 21 different brands of electric vehicles, analyzed whether electric vehicles could deliver the advertised range in actual use.[41] The study found that three Tesla model vehicles posted the *worst* performances, falling short of their advertised ranges by 26%, on average.[42]

74.     In yet another recent study, *all* Tesla vehicles failed to meet their advertised range estimates based on real-world driving tests. Edmunds.com, an automotive review website, tested various electric vehicle manufacturers' range estimate claims. As recently as July 2023, no Tesla vehicle was able to meet its advertised range estimate.[43]

### ***Tesla Has Already Admitted It Falsely Advertised and Exaggerated Range Estimates***

75.     South Korean regulators have already fined Tesla for falsely advertising the total ranges of its vehicles in South Korea.

76.     The Korea Fair Trade Commission determined that Tesla failed to inform consumers that the vehicle's total range could be negatively impacted by various factors, and that the range would likely be lower in normal driving conditions.[44]

---

[39] *Id.*

[40] *Id.*

[41] Gregory Pannone & Dave VanderWerp, *Comparison of On-Road Highway Fuel Economy and All-Electric Range to Label Values: Are the Current Label Procedures Appropriate for Battery Electric Vehicles?*, SAE Technical Paper (2023), https://www.sae.org/publications/technical-papers/content/2023-01-0349 (last accessed, Nov. 14, 2023).

[42] *Id.*; *see also supra* note 1.

[43] Edmunds, "Edmunds Tested: Electric Car Rage and Consumption" https://www.edmunds.com/car-news/electric-car-range-and-consumption-epa-vs-edmunds.html (last accessed, Nov. 14, 2023).

[44] *See supra* note 1.

77.     South Korean regulators required Tesla to publicly admit that it had misled consumers regarding its range estimates for Tesla vehicles. In a June 19, 2023 statement, Tesla executives, including Elon Musk, acknowledged that Tesla had employed "false/exaggerated advertising."[45]

***Tesla Owners Have Noticed that the Ranges in Their Vehicles Are Not as Advertised***

78.     As Tesla owners used their vehicles, they soon realized that their vehicles did not perform as expected or advertised because the electric vehicles were consistently incapable or driving at the advertised ranges.

79.     As Reuters reported, one Tesla Model 3 owner was required to stop to charge his electric vehicle numerous times during a road trip, and he noticed that he was only receiving about 150 miles of range when his electric vehicle battery was fully charged, which was well below the advertised range.[46]

80.     This understandably caused great concern among Tesla owners, who were worried that the batteries in their vehicles were defective or failing. Based on these concerns, consumers began contacting Tesla to seek assistance and confirmation that the batteries in their electric vehicles were not failing.

81.     Tesla provides a mobile app to all Tesla owners, which links to each owner's Tesla electric vehicle. The application allows the owner to control the vehicle, view information about the vehicle, and, if necessary, to schedule a service appointment for diagnostics or repair with a Tesla dealership or representative.

82.     Based on their concerns regarding potential issues with the batteries in their Tesla electric vehicles—because the range was consistently falling short of advertised estimates—consumers used their Tesla mobile app to register complaints or schedule service appointments for a representative to check their vehicle.

---

[45] *Id.*
[46] *Id.*

1     ***Tesla Created a "Diversion" Team to Handle Complaints Related to Vehicle Range***

2     83.     Facing mounting complaints and appointments regarding range concerns, Tesla

3 created a special "team" that was tasked specifically with handling these complaints.

4     84.     However, Tesla's reasoning for creating this team was not to assuage Tesla

5 owners' concerns. Rather, Tesla created this team to divert customers away from service

6 appointments, in an effort to save Tesla time and money in handling service appointments.

7     85.     This "Diversion Team" was created solely to handle complaints and service

8 appointments regarding concerns over vehicle range. Members of the Diversion Team were

9 tasked with "diverting" customers away from service appointments and would simply cancel any

10 service appointment that was nominally related to concerns over a vehicle's range.[47]

11     86.     Rather than allowing a customer to attend a service appointment regarding their

12 range concerns, the Diversion Team would run remote diagnostic on a complaining customer's

13 vehicle. The Diversion Team would call the customer and explain that Tesla's advertised range

14 was a "prediction," rather than an actual measurement. The team was trained to explain to

15 customers that the electric vehicle's batteries naturally degrade over time—and, thus, the

16 vehicle's range will be reduced.[48] Upon information and belief, the team did not explain to

17 customers that Tesla's method for calculating the originally advertised range was aggressive, or

18 that the software algorithm displaying the updated vehicle range in real-time did not accurately

19 reflect the range at higher battery percentages.

20     87.     Notably, when running diagnostics, if the diagnostic indicated some other issue

21 with a customer's vehicle, the Diversion Team was instructed *not* to inform the customer and

22 instead was required to simply close the customer's case.[49]

23     88.     Tesla also updated the Tesla mobile app to disallow any customer who was

24 voicing concern over their vehicle's range from scheduling a service appointment. Instead, the

25

26 [47] *Id.*

[48] *Id.*

27 [49] *Id.*

app would only allow them to ask that a Tesla representative contact them regarding their concern. All such complaints and concerns were routed directly to the Diversion Team.[50]

89.     Following Tesla mobile app update, any time a customer complained or voiced concerns about their Tesla vehicle's range, the app would simply provide an explanation that the vehicle's range "depends on many factors, particularly your environment and personal driving habits." However, the app also would note that the "[d]isplayed range in your Tesla is adapted based on fixed EPA test data, not your personal driving patterns," as indicated below:[51]



90.     Complaints and concerns regarding Tesla vehicle range continued to steadily increase. At one point, the Diversion Team was handling 2,000 complaints a week. Customers voiced understandable frustration over the fact that they were not allowed to book service appointments regarding their concerns over their vehicles' range.[52]

91.     As complaints continued to increase, the Diversion Team was expected to handle

---

[50] *Id.*
[51] *Id.*
[52] *Id.*

CLASS ACTION COMPLAINT

and close 750 cases per week. Diversion Team members were told to call complaining customers just once. If the customer did not answer this single call, the Diversion Team would close the customer's case as being "nonresponsive." If a customer did answer, the Diversion Team was required to handle the call as quickly as possible—in five minutes or less.[53] This did not afford adequate time to alleviate customers' concerns.

92.     By late 2022, the Diversion Team stopped running remote diagnostics on complaining customers' vehicles altogether.[54]

93.     Essentially, by late 2022, if a Tesla owner complained or voiced concern over the range of their Tesla electric vehicle, Tesla would not even check to confirm if, in fact, anything was indeed wrong with the electric vehicle or its battery. Put simply, Tesla ensured that its representatives told thousands upon thousands of customers that there was nothing wrong with their electric vehicles without ever first confirming if that was actually the case.[55]

94.     The Diversion Team was created to alleviate pressure on Tesla, which was mounting due to its inability to deliver its exaggerated advertised vehicle ranges, rather than actually help customers or alleviate their concerns.

### ***Tesla's Conduct Violates Its Warranties***

95.     Tesla warrants all its electric vehicles.

96.     Tesla model vehicles are covered by Tesla's New Vehicle Limited Warranty, which includes Tesla's Basic Vehicle Limited Warranty, Tesla's Supplemental Restraint System Limited Warranty, and Tesla's Battery and Drive Unit Limited Warranty.[56, 57]

97.     Tesla's Basic Vehicle Limited Warranty "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or

---

[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] Tesla | Support, "Vehicle Warranty" https://www.tesla.com/support/vehicle-warranty (last accessed, Nov. 14, 2023).
[57] Tesla's Supplemental Restraint System Limited Warranty addresses defects in the vehicle's seat belts or air bag system, and thus is not relevant to Plaintiff's claims here.

supplied by Tesla under normal use for a period of 4 years or 50,000 miles (80,000 km), whichever comes first."[58]

98.     Tesla's Battery and Drive Unit Limited Warranty "covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit." If a warranty repair is required, "Tesla will repair the [Battery or Drive] unit, or replace it." "[W]hen replacing a Battery, Tesla will ensure that the energy capacity of the replacement Battery is at least equal to that of the original Battery before the failure occurred." For Tesla Model S and Model X vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 150,000 miles (240,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Rear-Wheel Drive vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 100,000 miles (160,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Long Range, Model 3 Performance, Model Y All-Wheel Drive, Model Y Long Range, and Model Y Performance vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 120,000 miles (192,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." The "measurement method used to determine Battery capacity . . . [is] at the sole discretion of Tesla."[59]

99.     Notably, the Battery and Drive Unit Limited Warranty explains that "the vehicle's range estimates are an imperfect measure of Battery capacity because they are affected by additional factors separate from Battery capacity."[60]

100.    Tesla also offers a Used Vehicle Limited Warranty on all used vehicles purchased through Tesla, which offers coverage for "the remainder of 4 years or 50,000 miles left on the

---

[58] Tesla, "Model S Model X Model 3 Model Y New Vehicle Limited Warranty" https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last accessed, Nov. 14, 2023).
[59] *Id.*; Tesla | Support, "Vehicle Warranty" https://www.tesla.com/support/vehicle-warranty (last accessed, Nov. 14, 2023).
[60] *See supra* note 58.

Basic Vehicle Limited Warranty," and after its expiration, "provides additional coverage of 1 year or 10,000 miles."[61]

101.   Despite offering coverage under the Battery and Drive Unit Limited Warranty, including coverage for any "malfunctioning battery," Tesla refused to provide such coverage to Tesla owners who complained or voiced concerns regarding their electric vehicles' range.

102.   Normally, in order to receive warranty coverage, a Tesla owner would schedule a service appointment to determine whether the battery in their electric vehicle was "malfunctioning." If the battery was determined to be malfunctioning, under the Battery and Drive Unit Limited Warranty, Tesla would be required to offer a repair or replacement.

103.   However, as explained above, Tesla established a Diversion Team that was specifically tasked with canceling such service appointments. This ensured that customers' Tesla vehicles could not be reviewed to determine whether their range complaints arose, in fact, from a malfunctioning battery. This effectively ensured that Tesla would not be required to potentially offer more warranty repair or replacement coverages.

104.   Tesla's conduct, effectuated through the Diversion Team, violated and breached its warranties.

### *Tesla Knew That Its Advertised Range Estimates Exceeded the Actual Range of Its Vehicles*

105.   Tesla was aware that its advertised electric vehicle ranges were exaggerated and exceeded the actual range of the vehicle when driven in real-world driving conditions. Tesla, which employs its own method for calculating the range of its electric vehicles, was aware that this method of calculation produced aggressive and exaggerated range estimates.

106.   Further, Tesla was aware that various factors impacted the electric vehicle's range. Tesla understood that these factors were likely to occur in real-world driving conditions. For example, Tesla stated in its Battery and Drive Unit Limited Warranty that "the vehicle's

---

[61] Tesla | Support, "Vehicle Warranty" https://www.tesla.com/support/vehicle-warranty (last accessed, Nov. 14, 2023).

range estimates are an imperfect measure of Battery capacity because they are affected by additional factors separate from Battery capacity." Thus, Tesla was fully aware that its advertised range estimates were an "imperfect measure" and that its electric vehicles' ranges would vary and be impacted by normal driving conditions.

107.    Nevertheless, despite knowing this, Tesla did not inform consumers of this information when advertising their electric vehicle range estimates. For example, Tesla could have warned potential purchasers that cold weather would drastically lower the electric vehicle's range, but Tesla did not issue such a warning, instead only advertising an exaggerated range estimate.

108.    Tesla also was aware that its advertised range estimates were based on driving the electric vehicle with a full 100% charge of the electric vehicle battery. However, because Tesla suggests to customers that they establish a charge limit on their vehicles well-below full capacity, Tesla was aware that, in reality, customers would be unable to ever actually experience the full advertised range.

109.    Moreover, Tesla was aware that its software algorithms for displaying the vehicle range in real-time to Tesla electric vehicle owners provided exaggerated, "rosy" projections—particularly at higher percentages. Tesla understood that these algorithms did not accurately reflect the actual range of the electric vehicle, again exaggerating the range.

110.    At the latest, Tesla was aware that its advertised range estimates exceeded the vehicle's actual capabilities under real-world driving and charging conditions when Tesla established a Diversion Team to summarily handle, divert, and close customer complaints and concerns regarding vehicle range issues.

111.    Tesla knew, or at the very least should have known, that the actual range of each of its model vehicles was lower than the advertised estimated range before Tesla advertised such ranges.

***Had Tesla Honestly Advertised Its Vehicle Ranges, Consumers Would Have Acted Differently***

112.    Had Tesla honestly advertised its electric vehicle ranges, consumers either would

not have purchased Tesla model vehicles, or else would have paid substantially less for them.

113.    Tesla, based on its superior knowledge, could have and should have warned customers that its range estimates were based just that—estimates and hopeful projections that did not reflect regular conditions.

114.    Tesla should have warned potential purchasers that the ranges of Tesla model vehicles could be negatively impacted by various driving and environmental factors that were likely to exist; but Tesla did not.

115.    Tesla should have warned potential purchasers that the ranges of Tesla model vehicles were estimated based on full 100% battery charge, but that Tesla suggested that its model vehicles not be charged to full 100% battery charge on a regular basis.

116.    Tesla should have warned potential purchasers that the ranges of Tesla model vehicles were not estimated based on EPA standardized formulae—despite Tesla advertising the range estimates as "EPA estimates"—but instead based on Tesla's own proprietary method for calculating range, which allowed for a more aggressive estimate of total electric vehicle range.

117.    In fact, Tesla could have described the estimated range of its electric vehicles in terms similar to those included on fueleconomy.gov fuel economy labels, as described above, including but not limited to explaining that the advertised range is based on "[w]hen [the vehicle is] fully charged" or by warning consumers that the advertised range "will vary for many reasons including driving conditions." Tesla did not do so.

118.    Had Tesla revealed any of this information to potential purchasers at the time of purchase, by issuing a warning or addendum attached to its advertised estimated vehicle ranges, Plaintiff and Class Members would have either not purchased Tesla model vehicles or else would have paid substantially less for them.

119.    Tesla's conduct in false advertising its estimated vehicle ranges harmed Plaintiff and Class Members at the point of sale.

## **PLAINTIFF'S ALLEGATIONS**

120.    Plaintiff is a resident and citizen of Citrus Heights (Sacramento County),

California. In November 2022, Plaintiff purchased a used 2019 Tesla Model 3 vehicle from Tracy Volkswagen in Tracy, California (2605 Auto Plaza Way, Tracy, California 95304). The vehicle had 64,349 miles on it at the time of purchase. Plaintiff purchased his vehicle for approximately $52,204.

121.    Plaintiff conducted research on Tesla vehicles and on the Model 3 specifically by visiting the Tesla website as well as the Tracy Volkswagen dealership website. He also reviewed the vehicle's CARFAX report. The Tracy dealership listed the mileage range for the vehicle at around 220-240 miles, as referenced on Tesla's website, and verbally told Plaintiff the vehicle could achieve this same range in person when he visited the dealership.

122.    At no point in his pre-purchase research or in his discussions with the dealership was Plaintiff warned or told that the advertised range did not account for normal driving conditions or that it was exaggerated.

123.    Plaintiff's vehicle came with all Tesla applicable warranties, including the remainder of the Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

124.    After acquiring his Tesla vehicle, Plaintiff fully charged his vehicle to 100% battery charge and took an approximately 8-hour trip, about 385 miles away, from Sacramento to Los Angeles. Because his vehicle is advertised as getting 220 miles on a single charge, Plaintiff expected to stop two times to charge the vehicle. However, Plaintiff had to stop to charge the vehicle three times (about every 128 miles). In May 2023, when he made the same trip again, Plaintiff had to stop five times to charge the vehicle (about every 77 miles).

125.    On average, on information and belief, Plaintiff gets less than 150 miles on a full charge, despite the vehicle being advertised with a range of 220 miles.

126.    Since purchasing the vehicle, Plaintiff has contacted Tesla numerous times to voice concerns over his vehicle's range. On each occasion, Tesla responded by: (1) informing him that they ran remote diagnostics, and that the battery is operating as intended; (2) not responding at all and closing the ticket in reply to Plaintiff's subsequent complaint; or (3) told Plaintiff not to worry about actual miles driven.

127.   After Plaintiff's initial service request to Tesla regarding his vehicle's range was denied, Plaintiff charged his vehicle to 100% multiple times over several months for his daily work commute consisting of only city driving. Plaintiff did so in order to determine his vehicle's range on a fully charged battery. The maximum range Plaintiff achieved on his vehicle's fully charged battery was approximately 150 miles, well below Tesla's advertised range of 240 miles.

128.   Plaintiff then made additional service requests to Tesla, which were also summarily denied.

129.   At no point when Plaintiff spoke with Tesla representatives did Tesla representatives warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that the advertised range was exaggerated.

130.   The electric vehicle's advertised range was one of the most important factors Plaintiff considered when choosing to purchase his Tesla vehicle.

131.   Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

## CLASS ACTION ALLEGATIONS

132.   Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

133.   The Class and Sub-Classes are defined as follows:

**Class**:  All persons and entities in the United States who purchased a Tesla Model 3, Model S, Model Y, and Model X vehicle. (the "Nationwide Class" or "Class").

**California Sub-Class**:  All members of the Nationwide Class who reside in the State of California. (the "California Class")

**CLRA Sub-Class**:   All members of the California Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class**:   All members of the Nationwide Class who purchased their vehicles in the State of California.

134.   Plaintiff reserves the right to modify or amend the definition of the proposed Nationwide Class and State Class before the Court determines whether certification is appropriate and as the parties engage in discovery.

135.   ***Numerosity:*** Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands of putative Class Members who are generally ascertainable by appropriate discovery.

136.   ***Commonality:*** This action involves common questions of law and fact, which predominate over questions affective individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.   Whether Tesla model vehicles fail to deliver the advertised estimated vehicle range in normal driving conditions;

b.   Whether Tesla exaggerated its advertised estimated vehicle ranges;

c.   Whether Tesla knew that its advertised estimated vehicle ranges were exaggerated and could not be met under normal driving conditions;

d.   When Tesla gained such knowledge;

e.   Whether Tesla designed, manufacture, marketed, advertised, sold, or otherwise placed its model vehicles into the stream of commerce with such knowledge;

f.   Whether Tesla intentionally concealed the fact that its advertised estimated vehicle ranges were exaggerated or otherwise could not be met under normal driving conditions;

g.   Whether Tesla's conduct to divert complaints from Class Members who voiced concerns over their Tesla model vehicle's range violated the terms

1    of Tesla's warranties;

2          h.    Whether Plaintiff and Class Members were harmed by the fraud and

3               deceptive practices alleged herein;

4          i.     Whether Tesla was unjustly enriched by its deceptive practices; and

5          j.     Whether Plaintiff and the Class are entitled to equitable or injunctive

6               relief.

7        137.    *Typicality:* Plaintiff's claims are typical or those of the other Class Members

8 because, *inter alia*, all Class Members were injured through the common misconduct described

9 above and were subject in the same manner to Tesla's unfair, deceptive, and unlawful conduct.

10 Plaintiff is advancing the same claims and legal theories on behalf of himself and all members

11 of the Class.

12       138.    *Adequacy of Representation:* Plaintiff will fairly and adequately represent and

13 protect the interests of the Class in that he has no disabling conflicts of interest that would be

14 antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or

15 adverse to the other Class Members, and the infringement of the rights and the damages Plaintiff

16 has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in

17 complex consumer class action litigation, and Plaintiff intends to prosecute this action

18 vigorously.

19       139.    *Superiority:* Class litigation is an appropriate method for the fair and efficient

20 adjudication of the claims involved. Class action treatment is superior to all other available

21 methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a

22 large number of Class Members to prosecute their common claims in a single forum

23 simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and

24 expense that hundreds of individual actions would require. Class action treatment will permit the

25 adjudication of relatively modest claims by certain Class Members, who could not individually

26 afford to litigate a complex claim against large corporate defendants. Further, even for those

27 Class Members who could afford to litigate such a claim, it would still be economically

1  impractical.

2      140.    The nature of this action and the nature of laws available to Plaintiff and the Class

3  make the use of the class action device a particularly efficient and appropriate procedure to afford

4  relief to Plaintiff and the Class for the wrongs alleged because Tesla would necessarily gain an

5  unconscionable advantage since it would be able to exploit and overwhelm the limited resources

6  of each individual Class Member with superior financial and legal resources; the costs of

7  individual suits could unreasonably consume the amounts that would be recovered; proof of a

8  common course of conduct to which Plaintiff was exposed is representative of that experienced

9  by the Class and will establish the right of each Class Member to recover on the cause of action

10  alleged; and individual actions would create a risk of inconsistent results and would be

11  unnecessary and duplicative of this litigation.

12      141.    The class action is superior to all other available methods for the fair and efficient

13  adjudication of this controversy. Because of the number and nature of common questions of fact

14  and law, multiple separate lawsuits would not serve the interest of judicial economy.

15      142.    Notice of a certified class action and of any result or resolution of the litigation

16  can be provided to Class Members by first-class mail, email, or publication, or such other

17  methods of notice as deemed appropriate by the Court.

18      143.    Plaintiff does not anticipate any difficulty in the management of this litigation.

19  **CAUSES OF ACTION**

20  **FIRST CLAIM FOR RELIEF**

21  **BREACH OF EXPRESS WARRANTY**
**(By Plaintiff on Behalf of All Classes)**

22      144.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as

23  though fully set forth herein.

24      145.    Tesla provided Plaintiff and Class Members with Tesla's New Vehicle Limited

25  Warranty.

26      146.    Included in the New Vehicle Limited Warranty, Tesla provided Plaintiff and

27

Class Members with Tesla's Basic Vehicle Limited Warranty, which expressly "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use for a period of 4 years or 50,000 miles (80,000 km), whichever comes first."

147.    Tesla further provided Plaintiff and Class Members with Tesla's Battery and Drive Unit Limited Warranty, which expressly "covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit." If a warranty repair is required, "Tesla will repair the [Battery or Drive] unit, or replace it." "[W]hen replacing a Battery, Tesla will ensure that the energy capacity of the replacement Battery is at least equal to that of the original Battery before the failure occurred." For Tesla Model S and Model X vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 150,000 miles (240,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Rear-Wheel Drive vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 100,000 miles (160,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Long Range, Model 3 Performance, Model Y All-Wheel Drive, Model Y Long Range, and Model Y Performance vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 120,000 miles (192,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period."

148.    Tesla also offers a Used Vehicle Limited Warranty on all used vehicles purchased through Tesla, which offers coverage for "the remainder of 4 years or 50,000 miles left on the Basic Vehicle Limited Warranty," and after its expiration, "provides additional coverage of 1 year or 10,000 miles."

149.    The above express warranties became part of the basis of the bargain between Plaintiff and Class Members and Tesla.

150.    Plaintiff presented concerns with their vehicles' range to Tesla for repairs. Tesla, however, refused to remedy or even address these concerns, instead choosing to divert the claim

30

and dismiss it.

151.    As explained above, Tesla established a Diversion Team that was specifically tasked with canceling such service appointments. This ensured that customers' Tesla vehicles could not be reviewed to determine whether their range complaints arose, in fact, from a malfunctioning battery. This effectively ensured that Tesla would not be required to potentially offer more warranty repair or replacement coverages. It also effectively rendered the warranties null.

152.    Plaintiff and Class Members notified Tesla of the breaches within a reasonable time and/or were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranty would have been futile.

153.    Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Tesla's conduct described herein.

154.    Plaintiff and Class Members are entitled to legal and equitable relief against Tesla, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

**<u>SECOND CLAIM FOR RELIEF</u>**
**BREACH OF IMPLIED WARRANTY**
**(By Plaintiff on Behalf of All Classes)**

155.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

156.    Tesla provided Plaintiff and Class Members with an implied warranty that the Tesla vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Tesla vehicles are not fit for their ordinary purpose as electric vehicles because the vehicles fail to deliver adequate range when operated under normal driving conditions.

157.    Tesla impliedly warranted that the vehicles were of merchantable quality and fit

1   to provide adequate driving range for normal driving conditions.

2       158.   Contrary to the applicable implied warranties, the vehicles at the time of sale and

3   thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class

4   Members with reliable vehicles.

5       159.   Tesla's actions, as complained of herein, breached the implied warranty that the

6   Tesla vehicles were of merchantable quality and fit for such use.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301,** *et seq.*
**(By Plaintiff on Behalf of All Classes)**

     160.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

     161.   The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

     162.   This Court has jurisdiction over this matter under CAFA and can therefore assert alternative jurisdiction over Plaintiff's MMWA claims.

     163.   The Tesla vehicles are "consumer products" as defined by 15 U.S.C. § 2301(1).

     164.   Plaintiff and Class Members are "consumers" as defined by 15 U.S.C. § 2301(3).

     165.   Tesla is a "warrantor" and "supplier" as defined by 15 U.S.C. § 2301(4) and (5).

     166.   As detailed above, Tesla breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Tesla made about the Tesla vehicles, by failing to truthfully advertise and warrant the range of its vehicles, and by establishing a scheme to divert and systematically cancel customers' customer complaints, concerns, and service appointments relating to the range of their vehicles, which in turn created a system that prevented the warranties from functioning as intended (and, thus, rendered the warranties null and caused them to fail of their essential purpose).

167.    Tesla's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

168.    The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

169.    Tesla has been afforded reasonable opportunity to cure its breaches of warranty. Plaintiff previously provided reasonable notice to Tesla of their concerns and complaints regarding the range of their vehicles, creating service appointments to address the issues, which Tesla ultimately canceled. Despite this notice, to Plaintiff's knowledge, Tesla has taken no steps to correct its business practices or cure its breaches.

170.    In addition, resorting to any sort of informal dispute settlement procedure or affording Tesla another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Tesla has repeatedly mispresented the true quality and nature of its vehicles, has established a scheme to divert and systematically dispose of reasonable concerns and warranty complaints regarding the range of its vehicles, and has indicated no desire to participate in such a process at this time.  Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Tesla a reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

171.    As a direct and proximate result of Tesla's warranty breaches, Plaintiff and Class Members sustained damages and other losses to be determined at trial. Tesla's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
### Cal. Civ. Code § 1790, *et seq.*
### (By Plaintiff on Behalf of the California Class)

172.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

173.    Plaintiff and Class Members are "buyers" as that term is defined in the California Civil Code § 1791(b).

174.    The Tesla vehicles are "consumer goods" as that term is defined in the California Civil Code § 1791(a).

175.    At all relevant times, Tesla was the "manufacturer, distributor, warrantor and/or seller" of the Tesla vehicles within the meaning of the California Civil Code § 1791.

176.    Tesla provided Plaintiff and Class Members with express warranties that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use" and "covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit."

177.    Plaintiff presented concerns with his vehicle's range to Tesla for repairs. Tesla, however, refused to remedy or even address these concerns, instead choosing to divert the claim and dismiss it.

178.    As explained above, Tesla established a Diversion Team that was specifically tasked with canceling such service appointments. This ensured that customers' Tesla vehicles could not be reviewed to determine whether their range complaints arose, in fact, from a malfunctioning battery. This effectively ensured that Tesla would not be required to potentially offer more warranty repair or replacement coverages.

179.    Tesla's conduct as complained herein breached applicable warranties and violated the Song-Beverly Consumer Warranty Act.

### FIFTH CLAIM FOR RELIEF
**FRAUD**
**(By Plaintiff on Behalf of All Classes)**

202.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

203.    Tesla made material misrepresentations and omissions of fact in its advertising and marketing of the Tesla vehicles by exaggerating the range capabilities of its electric vehicles.

204.    Tesla's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the vehicles have a much greater vehicle range than what could be achieved under normal driving conditions.

205.    Plaintiff considered the Tesla vehicle's driving range to be an important factor when purchasing his Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

206.    Plaintiff and Class Members were actually misled and deceived and were induced by Tesla to purchase the vehicles. Had Tesla truthfully advertised the vehicle's range, Plaintiff and Class Members would have either not purchased the vehicles, or else would have paid substantially less for them.

207.    As a result of Tesla's conduct, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**NEGLIGENT MISREPRESENTATION**
**(By Plaintiff on Behalf of All Classes)**

208.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

209.    Tesla had a duty to provide honest and accurate information to consumers so that its customers could make informed decisions on the substantial purchase of a vehicle.

210.    Tesla misrepresented material facts regarding the Tesla vehicles' range to Plaintiff and Class Members, as described herein.

211.    Plaintiff and Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

212.    Tesla knew or reasonably should have known, that the average, reasonable consumer would be misled by Tesla's misleading and deceptive advertisements and statements, which falsely exaggerate the true nature of its vehicles' range.

213.    Plaintiff and Class Members justifiably relied on Tesla's misrepresentations and omissions and were actually misled and deceived and were induced by Tesla to purchase the vehicles. Had Tesla truthfully advertised the vehicle's range, Plaintiff and Class Members would have either not purchased the vehicles, or else would have paid substantially less for them.

214.    As a result of Tesla's conduct, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
**Cal. Civ. Code § 1750,** *et seq.*
**(By Plaintiff on Behalf of the California Class)**

215.    Plaintiff incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

216.    Tesla is a "person" as that term is defined in California Civil Code § 1761(c).

217.    Plaintiff and California Class Members are "consumers" as that term is defined in California Civil Code § 1761(d).

218.    Tesla engaged in unfair and deceptive acts in violation of the California Legal Remedies Act ("CLRA") by the practices described above, and by knowingly and intentionally misleading (through statements and omissions) Plaintiff and California Class Members in a material way in the process of purchasing the Tesla vehicles by advertising estimated vehicle ranges that were exaggerated or otherwise could not be met under normal driving conditions, without explaining or warning consumers of that fact. These acts and practices violate, at a minimum, the following sections of the CLRA:

> California Civil Code § 1770(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

> California Civil Code § 1770(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

California Civil Code § 1770(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

California Civil Code § 1770(a)(9) Advertising goods and services with the intent not to sell them as advertised.

219. Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business and were capable of deceiving, and did deceive, a substantial portion of the purchasing public.

220. Throughout the relevant period, Tesla knew or reasonably should have known that the Tesla vehicles failed to deliver the advertised estimated vehicle range under normal driving conditions.

221. Tesla was under a duty to Plaintiff and California Class Members to disclose the true nature of the estimated vehicle range of the Tesla vehicles because:

      a.    Tesla was in a superior position to know the true state of facts about the vehicle range of the Tesla vehicles;

      b.    Plaintiff and the California Class Members could not reasonably have been expected to learn or discover that the vehicle range was exaggerated and could not be met under normal driving conditions and thus were not in accordance with Tesla's advertisements and representations;

      c.    Tesla knew that Plaintiff and the California Class Members could not reasonably have been expected to learn or discover the true state of facts about the vehicle range; and

      d.    Tesla actively concealed and failed to disclose the fact that its advertised estimated vehicle ranges were exaggerated or otherwise could not be met under normal driving conditions from Plaintiff and the California Class.

222. In exaggerating the true state of facts for the vehicle range at the time of sale, Tesla has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

223.   Plaintiff and California Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

224.   The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged).

225.   Finally, the facts concerning the vehicle range that Tesla exaggerated in its advertisements to customers are also material because they contradict affirmative representations about Tesla vehicle range.

226.   Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles, or through its dealerships, Plaintiff and the California Class Members would have learned of the true vehicle range and would have acted differently. Had Plaintiff and California Class Members known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they either would not have purchased the vehicles or else would have paid substantially less for them. Accordingly, Plaintiff and California Class Members overpaid for their Tesla vehicles and did not receive the benefit of their bargain.

227.   Plaintiff plausibly would have learned of the true state of facts of the vehicle range if Tesla had accurately represented it through its advertising or to the sales representatives at Tesla dealerships. Plaintiff and the other California Class Members' injuries were proximately caused by Tesla's fraudulent and deceptive business practices.

228.   Pursuant to California Civil Code § 1782(a), Plaintiff provided Tesla with notice of its violations under the CLRA on November 15, 2023.  If, within 30 days, Defendant fails to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the equitable relief that he seeks now on behalf of himself and the CLRA Sub-Class.

229.   Plaintiff has attached his Declaration of Venue as Exhibit A to this Complaint, establishing that this Action has been properly commenced in this District, because a significant

1    portion of the relevant facts occurred in Sacramento County. *See* Exhibit A.

2      230.    Pursuant to California Civil Code § 1780, Plaintiff seeks an order enjoining Tesla

3    from the unlawful practices described above and a declaration that Tesla's conduct violated the

4    CLRA.

5      231.    Plaintiff, on behalf of himself and California Class Members, seeks equitable

6    relief and attorneys' fees and costs.

7                   **EIGHTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
8               **Cal. Bus. & Prof. Code § 17200,** *et seq.*

9            **(By Plaintiff on Behalf of the California Class)**

10      232.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as

11    though fully set forth herein.

12      233.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair

13    competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

14    deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

15      234.    Tesla has engaged in unfair competition and unfair, unlawful, or fraudulent

16    business practices by the conduct and statements described above, and by knowingly and

17    intentionally misleading (through statements and omissions) Plaintiff and California Class

18    Members about the true nature of the vehicle range (and the costs and diminished value of the

19    Tesla vehicles as a result of Tesla's conduct). Tesla knew or reasonably should have known

20    about the true nature of the vehicle range throughout the relevant period. Tesla should have

21    disclosed accurate and truthful information concerning the vehicle range in its advertising and

22    through its dealerships. Tesla was in a superior position to know the true facts related to the

23    vehicle range, and Plaintiff and California Class Members could not reasonably be expected to

24    learn or discover the true facts related to the vehicle range.

25      235.    These acts and practices have deceived Plaintiff and are likely to deceive the

26    public. In misrepresenting the vehicle range, Tesla breached its duties to disclose these facts,

27    violated the UCL, and caused injuries to Plaintiff and California Class Members.

236.   Plaintiff and California Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

237.   The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged).

238.   Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles for sale or the website's custom order tool, or through its dealerships, Plaintiff and California Class Members would have learned of the true vehicle range and would have acted differently. Had Plaintiff and California Class Members known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they either would not have purchased the vehicles or else would have paid substantially less for them. Accordingly, Plaintiff and California Class Members overpaid for their Tesla vehicles and did not receive the benefit of their bargain.

239.   The injuries suffered by Plaintiff and California Class Members greatly outweigh by any potential countervailing benefit, if any, to consumers or to competition. And such injuries are not of a kind that Plaintiff and California Class Members should have, or could have, reasonably avoided.

240.   Tesla's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313.

241.   Plaintiff, on behalf of himself and California Class Members, seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Tesla, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200 and under California law.

<u>**NINTH CLAIM FOR RELIEF**</u>
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(By Plaintiff on Behalf of the California Class)**

242.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

243.    The California False Advertising Law ("FAL") states: ""It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

244.    Tesla caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Tesla, to be untrue and misleading (through statements and omissions) to consumers, including Plaintiff and California Class Members.

245.    Tesla has violated the FAL because the misrepresentations and omissions regarding the vehicle range in its vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

246.    Plaintiff and California Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

247.    The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged).

248.    Plaintiff and California Class Members have suffered an injury in fact, including the losses of money or property, as a result of Tesla's unfair, unlawful, and/or deceptive practices.

249.    Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles for sale or the website's custom order tool, or through its dealerships, Plaintiff and the California Class Members would have learned of the true vehicle range and would have acted differently. Had Plaintiff and California Class Members known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they either would not have purchased the vehicles or else would have paid substantially less for them. Accordingly, Plaintiff and California Class Members overpaid for their Tesla vehicles and did not receive the benefit of their bargain.

250.    All of the wrongful conduct alleged herein occurred in the conduct of Tesla's business.

251.    Plaintiff, on behalf of himself and California Class Members, seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Tesla, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200 and under California law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Classes, respectfully requests that the Court:

a.    Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying one or more classes as defined above;

b.    Appoint Plaintiff as the representative of the Classes and his counsel as Class counsel;

c.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class Members are entitled;

d.    Award pre-judgment and post-judgment interest on such monetary relief;

e.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that enjoins Tesla from falsely advertising the estimated ranges of its model vehicles;

f.    Award reasonable attorneys' fees and costs; and

g.    Grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 22, 2023

/s/ *Tarek H. Zohdy*
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura H. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff*
*and the Proposed Class*